## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **FORT WORTH AVENUE PLAZA, LLC,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | **CIVIL ACTION NO. 3:24-cv-00205-E** |
| **ATLANTIC CASUALTY INSURANCE COMPANY,** | § § § § | |
| *Defendant*. | § § | |

## ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE ADA BROWN, U.S. DISTRICT JUDGE:

Defendant Atlantic Casualty Insurance Company (Atlantic Casualty) files this Answer to Plaintiff's Original Petition[1] (the Petition) and respectfully shows the Court as follows:

## A. ANSWER TO PLAINTIFF'S ORIGINAL PETITION

For each paragraph below, Atlantic Casualty quotes Plaintiff's allegations and responds accordingly.

### I. PARTIES

1.      Plaintiff owns the property made the basis of this suit located at: 3225

---

[1] Filed in Cause No. DC-23-20612; *Fort Worth Avenue Plaza, LLC v. Atlantic Casualty Insurance Company*; In the 193rd Judicial District Court of Dallas County, Texas.

Fort Worth Avenue, Dallas, Texas in Dallas County, Texas (the "Property").

*Answer:  Atlantic Casualty admits that Plaintiff owns the property located at 3225 Fort Worth Avenue, Dallas, Texas.*

2.    Defendant, ATLANTIC CASUALTY INSURANCE COMPANY ("Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and may be served by serving the Commissioner of Insurance at Texas Department of Insurance, 1601 Congress Avenue, Austin, Texas 78701; who shall then serve, pursuant to the policy at issue, Angela B. Grady, Vice President Claims, Atlantic Casualty Insurance Company, located at 400 Commerce Court, Goldsboro, North Carolina 27534. Service on the Commissioner of Insurance on Defendant is requested by certified mail, return receipt requested.

*Answer:  Atlantic Casualty admits that it is an insurance company formed under North Carolina law with its principal place of business at 400 Commerce Court, Goldsboro, North Carolina 27534.*

## II. DISCOVERY

3.    Plaintiff intends to conduct discovery under Level 3 control plan pursuant to the Texas Rules of Civil Procedure.  TEX. R. CIV. P. 190.4.

*Answer:  Paragraph 3 of the Petition does not contain an allegation and therefore does not require an admission or denial.*

### III. CLAIM FOR RELIEF

4.      At this time, Plaintiff cannot assess accurately a definite limit to the damages it has sustained or will sustain in the future as a result of Defendant's acts. Given the early state of this litigation, projections have not been declared regarding the full extent and severity of the injuries and damages.   In view of these circumstances, Plaintiff does not wish to impose any limit on what it may present to the jury or what the jury may consider as a range of damages in this case; however, Plaintiff makes the following representation in compliance with Tex. R. Civ. P. 47(c) to aid in the efficient court administration.

*Answer:   Paragraph 4 of the Petition does not contain allegations and therefore does not require an admission or denial. Atlantic Casualty denies Plaintiff is entitled to any damages as a result of its acts.*

5.      Plaintiff believes that the most reasonable option afforded under Tex. R. Civ. P. 47, at this time, prior to the completion of discovery in the case, is to seek monetary relief over $250,000 but not more than $1,000,000, exclusive of interest and costs, which is the only option that does not require Plaintiff to select a speculative, arbitrary cap on its damages.  Plaintiff reserves the right to modify or adjust this statement, as the litigation progresses, and additional evidence is compiled.  Regardless of what Plaintiff must state for administrative purposes as the amount of damages it seeks pursuant to Tex. R. Civ. P. 47(c), it desires to leave the

final determination of damages, if any, to the sole province of the jury, based upon the credible evidence presented to the jury at trial.

*Answer:  Atlantic Casualty admits that Plaintiff is seeking monetary relief as referenced in paragraph 5 of the Petition but denies that Plaintiff is entitled to such relief.*

## IV.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction of this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court.

*Answer:   Atlantic Casualty denies that jurisdiction is proper in the state district court of Dallas County, Texas.  Atlantic Casualty maintains that the federal district courts have original jurisdiction over the subject matter of Plaintiff's suit because Plaintiff and Atlantic Casualty are diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.   Therefore, Atlantic Casualty denies the averment contained in paragraph 6 of the Petition.*

7.    Venue is proper in Dallas County under Tex. Civ. Prac. & Rem. Code §15.002(a)(1) because the Property at issue is located in this County, the loss occurred in this County, and the claims asserted herein arose from one or more acts and/or omissions that occurred in this County.

*Answer: Atlantic Casualty admits that the property in question is located in Dallas County, Texas. Venue is proper in the Dallas Division of the Northern District of Texas because all or a substantial part of the alleged events or omissions giving rise to the claims occurred in Dallas County, Texas and the real property at issue is located in Dallas County, Texas.*

## V.  FACTUAL BACKGROUND

8.     Plaintiff entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Plaintiff's Property from certain storm related damages, should they occur.

*Answer: Atlantic Casualty admits that it issued a commercial property policy to Plaintiff that provides certain coverage for certain storm related damages that occurred during the policy period.  Atlantic Casualty denies the remaining allegations in this paragraph.*

9.     The agreement was drafted by Defendant and assigned Policy Number M360000106-0 (the "Policy").  The Policy's effective date was from June 27, 2021, to June, 27, 2022 (the "Policy Period").  Defendant believed the Property was suitable to insure and promised to cover damage laid out in the Policy.

*Answer:  Atlantic Casualty admits that it issued Policy No. M360000106-0 (the Policy), which describes the insured property as 3225 Fort Worth Avenue, Dallas, Texas (the Property), and that the policy period was June 27,*

2021 to June 27, 2022.  *Atlantic Casualty denies any remaining allegations in this paragraph.*

10.     Coverage under the Policy covers physical damage to the buildings and business personal property on the Property as a result of hail, wind, and rain.

*Answer:  Atlantic Casualty admits the Policy covers certain physical damage and business personal property within the Policy terms and exclusions that occur during the Policy period.  Atlantic Casualty denies the remaining allegations in this paragraph.*

11.     During the Policy Period, a hail, wind, and rainstorm occurred at the Property and throughout large swathes of Dallas County, Texas, which severely damaged Plaintiff's Property.

*Answer:  Atlantic Casualty denies the allegations contained in paragraph 11 of the Petition.*

12.     Plaintiff subsequently filed a claim under the Policy.

*Answer:  Atlantic Casualty admits that Atlantic Casualty received a Notice of Claim on January 16, 2023 for a purported date of loss of March 14, 2022.*

13.     Defendant assigned the claim, Claim Number 01-TX-013062 (the "Claim").

*Answer:  Atlantic Casualty admits the allegation contained in paragraph 13 of the Petition.*

14.     Defendant hired Cross Claims Service, Inc. ("Cross Claims") that then assigned the Claim to adjuster Ben Ralph ("Ralph") to inspect the Property.

*Answer:  Atlantic Casualty admits the allegation contained in paragraph 14 of the Petition.*

15.     Defendant claimed Ralph was qualified to: identify hail and wind damage, determine whether a claim is covered or not covered, and make an estimate once covered damage is determined.

*Answer:  Atlantic Casualty is without sufficient information to admit or deny because Atlantic Casualty cannot identify the instance in which Plaintiff makes this contention.*

16.     However, with no explanation or apparent reason, Defendant later retained an engineering firm, Envista Forensics ("Envista").  Envista inspected the Property on February 23, 2023, and completed its report on March 3, 2023.  Envista found various instances of "circular indentations" on the roofing materials but ultimately determined that any covered storm damage found on the Property was due to some storm that occurred outside the policy period.

*Answer:  Atlantic Casualty admits that it retained a licensed engineer with Envista Forensics to inspect the Property.  Atlantic Casualty admits that the licensed engineer with Envista Forensics inspected the Property on February 23, 2023 and authored a report dated March 3, 2023.  Atlantic Casualty*

*admits that the engineer observed "circular indentations" on the roofing material.  Atlantic Casualty admits that the Envista Forensics' engineer determined that the observed damage was the result of a storm event occurring outside of the Policy period.  Atlantic Casualty denies any remaining allegations in this paragraph.*

17.     Defendant never gave a valid reason as to why its adjuster could not simply adjust and inspect the claim itself, but it is now clear Defendant used an engineer in an attempt to bolster Defendant's pre-determined outcome of denying Plaintiff's Claim.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.  Atlantic Casualty denies any remaining allegations in this paragraph.*

18.     Further, on information and belief, prior to Defendant insuring the Property, it received an underwriter's inspection report detailing all pre-existing damage to the Property.  This report was obviously not shared with Defendant's agents because there would not be a need for conclusory findings about whether damages were pre-existing, the report would've definitively listed what damage was pre-existing and what was not.

*Answer:  Atlantic Casualty admits that it received an underwriter's inspection report for the Property following the underwriter's inspection on July 16,*

*2021, after the Policy incepted.  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.  Atlantic Casualty denies any remaining allegation in this paragraph.*

19.    On information and belief, the underwriter's inspection report would have listed preexisting damage to the roofing system which Defendant and its agents point to as the cause of loss to the Property.

*Answer:  Atlantic Casualty denies the allegations in paragraph 19 of the Petition.*

20.    Defendant's failure to provide the underwriter's inspection report or consider it during the claims process provides evidence of its pretextual investigation.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.   Atlantic Casualty denies the allegations in this paragraph.*

21.    Defendant also strategically withheld the underwriting file from Plaintiff despite request.  If Defendant was in possession of definitive proof of pre-existing damage, it should have been shared with Plaintiff.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.   Atlantic Casualty admits that Plaintiff's counsel requested a copy of the underwriting file, but denies the*

*remaining allegations in this paragraph.*

22.  Defendant wrongfully denied portions of Plaintiff's Claim by incorrectly applying the applicable Policy language, failing to fully investigate the damage, and accepting the conclusions of incomplete reports.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

23.  Defendant did not conduct an adequate investigation into the damages claimed by Plaintiff when determining the Claim was not covered under the Policy.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

24.  Moreover, Defendant made misrepresentations to Plaintiff about damages that were sustained by the wind, hail, and rainstorm, claiming that a large portion of the damage was not covered because it was either pre-existing, mechanically damaged, or that the damage was excluded due to wear and tear. Defendant further misrepresented that the real cause of the damage was from a storm outside the policy period without actually explaining why the reported storm event could not have caused the damage reported.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

25.  Defendant and its agents assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Property and undervalued all damage observed during the inspection.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

26.    Based on all facts listed above, Defendant and its agents performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's Claim for the covered Property.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.  Atlantic Casualty denies the allegations in this paragraph.*

27.    Plaintiff fully complied with all requirements under the Policy to properly notify the Defendant of the loss to its covered Property and cooperate with Defendant in its investigation of the Claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 27 of the Petition.*

28.    In sum and without limitation, Defendant breached the terms of the parties' agreement and acted with bad faith under the Insurance Code, DTPA, and common law in at least the following ways:

  a.  Defendant's expert, Envista, completed the inspection without all relevant data to support its conclusions;

  b.  Defendant unreasonably relied on the incomplete reports created by Cross Claims and Envista;

  c.  Defendant failed to share its underwriting file with Cross Claims and Evista when processing the Claim;

  d.  Defendant failed to share its underwriting file with Plaintiff at time

of denial of the Claim;

    e.   Defendant misrepresented the actual observed causes of the damage—blaming a storm event outside the Policy Period as a pre-determined basis to deny the claim; and

    f.   Defendant misrepresented the observed damages as being caused by something other than a covered cause of loss as a pre-determined basis to deny the claim.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

## VI.    CAUSES OF ACTION

A.   <u>Breach of Contract</u>

29.    Plaintiff incorporates each and every paragraph of this Petition by reference as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer:  The statement contained in paragraph 29 of the Petition does not require a response.  Atlantic Casualty adopts its responses herein and denies liability to Plaintiff.*

30.    Defendant entered into the Policy with Plaintiff that covered, among other things, direct physical loss to the Property caused by wind, hail, and rain.

*Answer:  Atlantic Casualty admits that it issued the Policy to Plaintiff. Atlantic Casualty admits that the Policy provides certain coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."*

*This damage must first occur during the policy period and not before or after. However, the Policy speaks for itself, and Atlantic Casualty denies the allegations in this paragraph to the extent that they inaccurately portray or are inconsistent with the Policy's terms and conditions.*

31.    Plaintiff's Property sustained damage during the Policy Period as a result of a wind, hail, and rainstorm which is a covered cause of loss under the Policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 31 of the Petition.*

32.    Plaintiff timely made a claim under the Policy for wind, hail, and rain damage.

*Answer:  Atlantic Casualty admits that Plaintiff submitted a claim under the Policy, but denies that Plaintiff gave notice under the Texas Insurance Code as required for storm claims.  Atlantic Casualty denies the remaining allegations in this paragraph.*

33.    Subsequent thereto, Defendant breached the terms of the Policy by wrongfully denying covered damages and underpaying damages it found covered.

*Answer:  Atlantic Casualty denies the allegations in paragraph 33 of the Petition.*

34.    As a result of Defendant's breach of the Policy, Plaintiff has sustained: (1) actual damages; (2) consequential damages (related to Plaintiff's inability to

make necessary repairs, increased costs of construction and other related consequential damages); (3) incurred reasonable and necessary attorney's fees to date; and (4) Plaintiff has been unable to make all repairs to the Property because of Defendant's prior material breach of failing to pay the amounts due and thus preventing Plaintiff from performing under the contract.

*Answer: Atlantic Casualty denies the allegations in paragraph 34 of the Petition.*

B.     Insurance Code Violations

35.     Plaintiff incorporates each and every paragraph of this Petition by reference as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer: The statement contained in paragraph 35 of the Petition does not require a response. Atlantic Casualty adopts its responses herein and denies liability to Plaintiff.*

*Prompt Payment of Claims Statute*

36.     Plaintiff was insured under the Policy during the Policy Period.

*Answer: Atlantic Casualty admits the averment in paragraph 36 of the Petition, subject to the terms of the Policy.*

37.     During the Policy Period, a wind, hail, and rainstorm swept through Dallas, Texas and damaged Plaintiff's Property.

*Answer: Atlantic Casualty denies the allegations in paragraph 37 of the Petition.*

38.     Plaintiff gave proper notice of the Claim under the Policy to Defendant.

*Answer: Atlantic Casualty denies that Plaintiff gave proper notice under the Texas Insurance Code.*

39.     Defendant is under an obligation to promptly pay Plaintiff's Claim pursuant to Texas Insurance Code § 542.058.

*Answer: Atlantic Casualty agrees it is required to pay covered claims within the requirements of the Texas Insurance Code but denies that such obligation exists because Plaintiff's claim is not covered.*

40.     To date, Defendant has not tendered payment for any of Plaintiff's damages arising out of its Claim with Defendant.

*Answer: Atlantic Casualty admits the averment in paragraph 40 of the Petition. Atlantic Casualty denies coverage for the alleged claim.*

41.     Despite Defendant's clear obligation to pay, Defendant delayed payment of Plaintiff's Claim for a time exceeding the period specified by statute when it underpaid damages covered under the Policy and wrongfully denied damages clearly covered from the Policy.

*Answer: Atlantic Casualty denies the allegations in paragraph 41 of the Petition.*

42.     The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

*Answer:   Atlantic Casualty denies the allegations in paragraph 42 of the Petition.*

43.     To date, Defendant has not paid the full value of the Claim.  In addition to the amount of the Claim, Plaintiff is entitled to statutory damages at the highest lawful rate, statutory interest, and attorneys' fees.  TEX. INS. CODE § 542.060.

*Answer:   Atlantic Casualty denies the allegations in paragraph 43 of the Petition, and denies that Plaintiff is entitled to statutory damages.*

44.     Defendant's violations caused injury to Plaintiff.  Plaintiff seeks all recoverable amounts, including: (1) actual damages; (2) statutory damages; (3) reasonable and necessary attorneys' fees and costs; and (4) pre- and post-judgment interest at the highest lawful rate.

*Answer:   Atlantic Casualty denies the allegations in paragraph 44 of the Petition, and denies that Plaintiff is entitled to such relief.*

C.     Other Insurance Code Violations

45.     Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer:   The statement contained in paragraph 45 of the Petition does not*

*require a response.  Atlantic Casualty adopts its response here and denies liability to Plaintiff.*

46.   Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

*Answer:  Atlantic Casualty admits the averment in paragraph 46 of the Petition as to any covered claim.  However, claims that are not covered are not subject to certain provisions in the insurance code.*

47.   Plaintiff is a "person" under the Texas Insurance Code § 541.002. Likewise, Defendant is engaged in the business of insurance and is thus a "person" under § 541.002.

*Answer:  Atlantic Casualty admits the averment in paragraph 47 of the Petition.*

48.   Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

*Answer:  Atlantic Casualty admits the averment in paragraph 48 of the Petition as to any covered claim.  Claims that are not covered are not subject to all insurance code provisions.*

49.   Defendant violated § 541.051 of the Texas Insurance Code by making statements misrepresenting the terms and/or benefits of the Policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 49 of the*

*Petition.*

50.    Defendant violated § 541.060:

      **i.**    **541.060(a)(1)- misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue.**

*Answer:   Atlantic Casualty denies the allegations in paragraph 50 of the*

*Petition.*

51.    Defendant misrepresented the following material facts:

    a.   Defendant's agents had obtained and reviewed all important relevant reports on the Property and properly investigated the roof damage enabling Defendant to make a reasonable determination as to whether the roof damage was covered when in reality Defendant withheld the underwriter's inspection report;

    b.   There was no damage to Plaintiff's roofing system sustained during a storm which occurred during the Policy Period;

    c.   Virtually all observed storm related damage was from wind, hail, and rainstorms which occurred outside the Policy Period; and

    d.   The actual cause of any damage to the Property resulted from long-standing wear and tear, lack of maintenance, foot traffic, mechanical damage, or other excuses supposedly excluded by the Policy.

*Answer:   Atlantic Casualty denies the allegations in paragraph 51 of the*

*Petition.*

52.    Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused Plaintiff damages.

*Answer:   Atlantic Casualty denies the allegations in paragraph 52 of the*

*Petition.*

> ### ii.   *541.060(a)(2) - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear.*

53.    Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear by:

a.   Misrepresenting material facts as set forth in paragraph 51;

b.   Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

c.   Failing to properly investigate the exterior and interior damage;

d.   Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Property back to its pre-loss condition;

e.   Failing to send the underwriter's inspection report to either Cross Claims or Envista for them to review when determining whether the storm and interior damage at the Property was pre-existing;

f.   Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

g.   Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system; and

h.   Failing to write an estimate that includes all storm related damage found to be sustained by the roofing system within the Policy Period.

*Answer:   Atlantic Casualty denies the allegations in paragraph 53 of the Petition.*

54.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff damages.

*Answer:  Atlantic Casualty denies the allegations in paragraph 54 of the Petition.*

>    **iii.     541.060(a)(3) - failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim.**

55.     Defendant violated § 541.060(a)(3) by failing to promptly provide Plaintiff a reasonable basis for Defendant's denial of the Claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 55 of the Petition.*

56.     Defendant's denial letter was misleading because it was based solely on the outcome-oriented and incomplete reports from Cross Claims and Envista.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss, and denies the allegations in paragraph 56 of the Petition.*

57.     Defendant failed to explain:

   a.  How Cross Claims or Envista could properly determine covered damage without reviewing the underwriter's inspection report;

   b.  How Cross Claims or Envista could determine historical damage without the underwriter's inspection report; nor [sic]

*Answer:  Atlantic Casualty denies the allegations in paragraph 57 of the Petition.*

58.    Further, Defendant's denial letter was mostly regurgitation of Policy language and the excuses its engineering firm, Envista, came up with in collusion with Defendant.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss, and denies the allegations in paragraph 58 of the Petition.*

59.    If Defendant had definitive proof damage to the Property pre-existed the Policy Period, then such information should have been disclosed to Plaintiff. However, Defendant has provided no explanation as to why it withheld such an important document as the underwriter's inspection report.

*Answer:  Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss, and denies the allegations in paragraph 59 of the Petition.*

60.    Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff damages.

*Answer:  Atlantic Casualty denies the allegations in paragraph 60 of the Petition.*

    **iv.**    *514.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff.*

61.    Defendant failed to adequately inspect the Property and as a result failed to pay Plaintiff's Claim in a timely manner.

*Answer: Atlantic Casualty denies the allegations in paragraph 61 of the Petition.*

62.    Specifically, Defendant took months to render a decision letter that was misleading and riddled with misrepresentations. Envista's report was finalized on March 3, 2023 so there was no reason why Defendant could not issue a decision letter prior to May 12, 2023.

*Answer: Atlantic Casualty admits that Envista Forensics' report was finalized on March 3, 2023. Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss, and denies the remaining allegations in paragraph 62 of the Petition.*

    **v.**    *541.060(a)(7) - refusing to pay the claim without conducting a reasonable investigation with respect to the claim.*

63.    Defendant violated § 541.060(a)(7) by:

    a. Misrepresenting the material facts as set forth in paragraph 51;

    b. Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

    c. Failing to properly investigate the exterior and interior damage;

d. Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Property back to its pre-loss condition;

e. Failing to send the underwriter's inspection report to either Cross Claims or Envista for them to review when determining whether the storm and interior damage at the Property was pre-existing;

f. Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

g. Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system;

h. Failing to write an estimate that includes all storm related damage found to be sustained by the roofing system within the Policy Period; and

i. Failing to pay the Claim.

*Answer: Atlantic Casualty denies the allegations in paragraph 63 of the Petition.*

64. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Plaintiff damages.

*Answer: Atlantic Casualty denies the allegations in paragraph 64 of the Petition.*

65. Defendant violated § 541.061 by making an untrue statement of material fact by grossly underestimating the cost to repair and replace Plaintiff's Property, representing that Defendant's agents properly researched whether certain

damaged Property could be repaired versus having to be replaced, and that all relevant documents were disclosed and considered by Defendant's agents in determining whether the damage sustained to the Property was a covered cause of loss.

*Answer:  Atlantic Casualty denies the allegations in paragraph 65 of the Petition.*

D.    Deceptive Trade Practices Act Violations

66.    Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer:  The statement contained in paragraph 66 of the Petition does not require a response.  Atlantic Casualty incorporates its responses herein and denies liability to Plaintiff.*

67.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

*Answer:  Atlantic Casualty admits Plaintiff obtained the Policy from Atlantic Casualty.  Atlantic Casualty is without sufficient information to admit or deny if Plaintiff qualifies as a "consumer" as that term is defined by the Deceptive Trade Practices Act.*

68.    Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

*Answer: Atlantic Casualty admits the averment in paragraph 68 of the Petition.*

69.     Defendant violated the Texas Deceptive Trade Practices Act in the following respects:

   a. Defendant represented that the Policy confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

   b. Defendant failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed; and

   c. Defendant, by accepting insurance premiums and commissions but refusing, without a reasonable basis, to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that this Defendant took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

*Answer: Atlantic Casualty denies the allegations in paragraph 69 of the Petition.*

70.     On information and belief, Defendant knowingly committed the acts complained of above.

*Answer: Atlantic Casualty denies the allegations in paragraph 70 of the Petition.*

71.     On information and belief, Defendant received an underwriter's

inspection report which provided an overview of the Property condition for insuring purposes.

*Answer: Atlantic Casualty admits that it received an underwriter's inspection report for the Property.*

72.     On information and belief, the underwriter's inspection report from 2021 did not indicate any such lack of maintenance, mechanical damage, or wear and tear at Plaintiff's Property.

*Answer: Atlantic Casualty denies this allegation because it assumes the roof was inspected by the firm that prepared the underwriting report, which it was not.*

73.     Further, Defendant's estimates were not reasonable as they were the result of outcome-oriented investigations.  Defendant owed Plaintiff the full benefits under the Policy for a covered losses and instead of documenting damage to the Property, it arbitrarily ignored extensive internal documentation when denying the Claim.

*Answer:   Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss.   Atlantic Casualty denies the remaining allegations in paragraph 73 of the Petition.*

74.     As a result, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b) and reasonable

and necessary attorney's fees as allowed by § 17.50 of the Business and Commerce Code.

*Answer: Atlantic Casualty denies Plaintiff is entitled to the relief sought in paragraph 74 of the Petition.*

E.     Breach of The Duty of Good Faith and Fair Dealing

75.     Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer: The statement contained in paragraph 75 of the Petition does not require a response. Atlantic Casualty incorporates its responses herein and denies liability to Plaintiff.*

76.     Plaintiff and Defendant entered into a valid and enforceable insurance policy.

*Answer: Atlantic Casualty admits that it issued Policy No. M360000106-0 to Fort Worth Avenue Plaza, LLC.*

77.     Defendant owed Plaintiff the common law duty of good faith and fair dealing.

*Answer: Atlantic Casualty admits the averment in paragraph 77 of the Petition.*

78.     Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by:

a. Misrepresenting the material facts as set forth in paragraph 51;

b. Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

c. Failing to properly investigate the exterior and interior damage;

d. Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Property back to its pre-loss condition;

e. Failing to send the underwriter's inspection report to either Cross Claims or Envista for them to review when determining whether the storm and interior damage at the Property was pre-existing;

f. Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

g. Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system;

h. Failing to write an estimate that includes all storm related damage found to be sustained by the roofing system within the Policy Period; and

i. Failing to pay the Claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 78 of the Petition.*

79.    Defendant's failure or refusal to provide its own agents with the underwriter's inspection report reveals that it was never planning on launching a good faith investigation into Plaintiff's Claim.  At the very least, this action raises a question as to the objectivity of the claims process.  *Gardenbure v. Century Surety*

*Co.*, No. 6:21-CV-00873-ADA (W.D. Tex. Feb. 7, 2023).

> *Answer: Atlantic Casualty denies any impropriety in its investigation or adjustment of Plaintiff's reported loss. Atlantic Casualty denies the remaining allegations in paragraph 79 of the Petition.*

80.     Upon information and belief, Defendant's actions were performed without due regard or care for the claim process and were done intentionally and/or with gross negligence.

> *Answer: Atlantic Casualty denies the allegations in paragraph 80 of the Petition.*

81.     Defendant was aware at all times that its actions would result in the denial and underpayment of Plaintiff's Claim and result in mental anguish and extraordinary harm to Plaintiff.

> *Answer: Atlantic Casualty denies the allegations in paragraph 81 of the Petition.*

82.     As a result of Defendant's aforementioned acts and/or omissions, Plaintiff sustained: (1) actual damages; (2) consequential damages (related to Plaintiff's inability to make necessary repairs, increased costs of construction and other related consequential damages); (3) incurred reasonable and necessary attorney's fees to date; and (4) Plaintiff has been unable to make all repairs to the Property because of Defendant's prior material breach of failing to pay the amounts

due and thus preventing Plaintiff from performing under the contract.

*Answer:  Atlantic Casualty denies the allegations in paragraph 82 of the Petition, and further denies that Plaintiff is entitled to the relief sought in this paragraph.*

## VII.   ATTORNEYS' FEES

83.    Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

*Answer:  The statement contained in paragraph 83 of the Petition does not require a response.  Atlantic Casualty incorporates its responses herein and denies liability to Plaintiff.*

84.    Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

*Answer:  Atlantic Casualty admits that attorneys were retained by Plaintiff but is without knowledge of the retention agreement between Plaintiff and its attorney; Atlantic Casualty denies fees and expenses are reasonable or that it owes them.*

85.    Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001-38.003 because Plaintiff is represented by an attorney, presented the Claims to Defendant, and Defendant did not tender the

just amount owed before the expiration of the 30th day after the Claims were presented.

*Answer:  Atlantic Casualty denies that Plaintiff is entitled to the relief sought in paragraph 85 of the Petition.*

86.    Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

*Answer:  Atlantic Casualty denies that Plaintiff is entitled to the relief sought in paragraph 86 of the Petition.*

87.    Plaintiff further prays that it be awarded all reasonable and necessary attorneys' fees incurred in prosecuting Plaintiff's DTPA causes of action above pursuant to § 17.50(d).

*Answer:  Atlantic Casualty denies that Plaintiff is entitled to the relief sought in paragraph 87 of the Petition.*

## VIII.  CONDITIONS PRECEDENT

88.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.  TEX. R. CIV. P. 54.

*Answer:  Atlantic Casualty denies the allegations in this paragraph.*

## IX.    DEMAND FOR JURY

89.    Plaintiff demands a jury trial and tenders the appropriate fee.  TEX. R.

C<small>IV</small>. P. 216.

*Answer:  Atlantic Casualty admits that the Petition contains a demand for a jury trial.*

## X.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recovers actual damages, statutory interest and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show it to be justly entitled.

*Answer:  Atlantic Casualty denies that Plaintiff is entitled to the relief sought in its prayer in the Petition.*

*Any allegation in Plaintiff's Original Petition that Atlantic Casualty has not denied, admitted, or otherwise explained is hereby denied.*

### B.  <u>AFFIRMATIVE DEFENSES</u>

In addition to the foregoing responses, Atlantic Casualty asserts the following affirmative defenses.  Atlantic Casualty reserves the right to amend its answer to plead additional affirmative defenses as may be warranted.  Any defense asserted herein is pleaded in the alternative under the law, if necessary or appropriate.  Under

Fed. R. Civ. P. 10(c), Atlantic Casualty adopts by reference and fully incorporates for all purposes all coverage defenses asserted in its pleadings or motions.

1.     Plaintiff fails to state a claim for which relief may be granted.

2.     Atlantic Casualty issued Policy No. M360000106-0 (effective June 27, 2021 to June 27, 2022) to named insured Fort Worth Avenue Plaza, LLC (the Policy). Atlantic Casualty avers that the best evidence of the terms of the Policy are contained in the Policy and denies any allegations which may tend to enlarge, contradict or contravene the terms, conditions, exclusions, limitations of liability, as to the amount or otherwise, as therein provided.  Atlantic Casualty specifically pleads the terms, conditions, provisions, exclusions, and limitations of the Policy as if copied herein in full and places Plaintiff on full proof of any allegations seeking to infer liability by virtue of the existence of said Policy of insurance.

3.     The Policy contains the Building and Personal Property Coverage Form CP 00 10 10 12 that has the following language regarding payment for physical loss or damage to covered property:

**A. Coverage**

*We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*

*

4.     There is no coverage under the Policy to the extent the alleged damage was not caused by or resulting from a Covered Cause of Loss.

### E. *Loss Conditions*

*The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.*

\*

3.  *Duties In The Event Of Loss Or Damage*
    a.  *You must see that the following are done in the event of loss or damage to Covered Property:*
        \*
        (2) *Give us prompt notice of the loss or damage. Include a description of the property involved.*
        (3) *As soon as possible, give us a description of how, when and where the loss or damage occurred.*
        (4) *Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*
        (5) *At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*
        (6) *As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and*

> *records.*
> *Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*
> (7) *Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*
> (8) *Cooperate with us in the investigation or settlement of the claim.*
>
> *

5.   There is no coverage to the extent one or more conditions to coverage were not met.

6.   The Policy contains the following coinsurance provision:

> **F. Additional Conditions**
> *The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:*
> 1. *Coinsurance*
>    *If a Coinsurance percentage is shown in the Declarations, the following condition applies:*
>    a.  *We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.*
>    *Instead, we will determine the most we will pay using the following steps:*
>    (1) *Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;*
>    (2) *Divide the Limit of Insurance of the property by the figure determined in step (1);*
>    (3) *Multiply the total amount of loss, before the application of any deductible, by the figure*

> *determined in step (2);*
> *and*
> *(4) Subtract the deductible from the figure*
> *determined in step (3).*
> *We will pay the amount determined in step (4) or*
> *the Limit of Insurance, whichever is less. For the*
> *remainder, you will either have to rely on other*
> *insurance or absorb the loss yourself.*
> *b. If one Limit of Insurance applies to two or more*
> *separate items, this condition will apply to the*
> *total of all property to which the limit applies.*
>
> *\**

7.      In the unlikely event that it is determined that there is coverage for some or all of the damages alleged, any such coverage is subject to the coinsurance conditions.

8.      Plaintiff's reported damage is not covered because it commenced before the Policy went into effect:

> ### COMMERCIAL PROPERTY CONDITIONS
>
> *This Coverage Part is subject to the following conditions,*
> *the Common Policy Conditions and applicable Loss*
> *Conditions and Additional Conditions in Commercial*
> *Property Coverage Forms.*
>
> *\*\*\**
>
> *H. POLICY PERIOD, COVERAGE TERRITORY*
>
> *Under this Coverage Part:*
>
> *1.  We cover loss or damage commencing:*
> *a. During the policy period shown in the*
> *Declarations; and*

*

*CP 00 90 07 88*

9.      The Policy provides coverage for loss or damage commencing during the Policy period of June 27, 2021 to June 27, 2022 (the Policy Period).  The damage alleged by Plaintiff did not commence during this timeframe.  The roof condition was not a fortuitous loss as required for coverage.  The roof damage commenced prior to the Policy Period, which was a loss in progress and/or was a known loss.

10.     Plaintiff's reported damage did not result from a covered cause of loss or it is limited or excluded as follows:

### CAUSES OF LOSS – SPECIAL FORM

**A. Covered Causes Of Loss**

*When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.*

*     \**

**B. Exclusions**

*1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

*a.  Ordinance Or Law*
    *The enforcement of or compliance with an ordinance or law:*

(1) *Regulating the construction, use or repair of any property; or*

(2) *Requiring the tearing down of any property, including the cost of removing its debris.*

*This exclusion, Ordinance Or Law, applies whether the loss results from:*

(a) *An ordinance or law that is enforced even if the property has not been damaged; or*

(b) *The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demotion of property, or removal of its debris, following a physical loss to that property...*

\*

g. *Water*

(1) *Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);*

(2) *Mudslide or mudflow;*

(3) *Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;*

(4) *Water under the ground surface pressing on, or flowing or seeping through:*

(a) *Foundations, walls, floors or paved surfaces;*

(b) *Basements, whether paved or not; Or*

(c) *Doors, windows or other openings; or*

(5) *Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.*

*This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is*

*caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.*

*But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).*

h. *"Fungus," Wet Rot, Dry Rot and Bacteria Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria. But if "fungus," wet or dry rot or bacteria result in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."*

*This exclusion does not apply:*
*(1) When "fungus," wet or dry rot or bacteria result from fire or lightning; or*
*(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.*
*Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.*

\*

2. *We will not pay for loss or damage caused by or resulting from any of the following:*

\*

*d.*(1) *Wear and tear;*
  (2) *Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*

*  \**

  (4) *Settling, cracking, shrinking or expansion*

*  \**

(6) *Mechanical breakdown, including rupture or bursting caused by centrifugal force…*

(7) *The following causes of loss to personal property;*
   (a) *Dampness or dryness of atmosphere;*
   (b) *Changes in or extremes of temperature; or*
   (c) *Marring or scratching.*

*But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.*

*  \**

*f.   Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.*

*  \**

*j.   Rain, snow, ice or sleet to personal property in the open.*

*  \**

m. *Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.*

\*

3. *We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*

a. *Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.*

b. *Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.*

c. *Faulty, inadequate or defective:*
   (1) *Planning, zoning, development, surveying, siting;*
   (2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*
   (3) *Materials used in repair, construction, renovation or remodeling; or*
   (4) *Maintenance;*
   *of part or all of any property on or off the described premises*

\*

## C. *Limitations*

*The following limitations apply to all policy forms and endorsements, unless otherwise stated:*

1. *We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.*

   a. *Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.*

   b. *Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.*

   c. *The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:*
      (1) *The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or*
      (2) *The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.*

      \*

**F. Additional Coverage Extensions**

   \*

2. *Water Damage, Other Liquids, Powder Or Molten Material Damage*

*If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.*

\*

## G. Definitions

1. *"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.*

2. *"Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.*

   \*

   c. *Water damage means:*
      (1) *Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described*

*premises and contains water or steam; and*

*(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.*

*But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.*

*To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.*

*CP 10 30 10 12*

11.    The Policy contains the following exclusion for Mold, Bacteria, Virus

and Organic Pathogen Liability, which states:

### MOLD, FUNGUS, BACTERIA, VIRUS OR ORGANIC PATHOGEN EXCLUSION – PROPERTY

*This endorsement modifies insurance provided under the following:*

> *Building and Personal Property Coverage Form*
> *Causes of Loss – Basic Form*
> *Causes of Loss – Broad Form*
> *Causes of Loss – Special Form*

*The following sections of your policy are deleted:*

> *On the CP 00 10, A. Coverage, 4. Additional Coverages, d. Pollutant Clean-up Removal;*
> *On the CP 1010, C. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria;*
> *On the CP 1020, D. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria;*
> *And*
> *On the CP 1030, E. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria*

*We will not pay for loss or damage:*

> 1. *to direct physical loss of or damage to Covered Property;*
> 2. *to your expenses to remove debris of Covered Property;*
> 3. *to any actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration";*
> 4. *to any extra expense you incur during the "period*

*of restoration";*

5. *to damages for the devaluations of property or for the taking, use or acquisition or interference with the rights of others in property or air space,*

6. *to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogen"; or*

7. *to any litigation or administration procedure in which an insured may be involved as a party;*

*arising directly, indirectly, or in concurrence, or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogen", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.*

*"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, "fungus", bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, or biogenic aerosol.*

*CP MOLD 12/14*

12.     In the event that the reported damage to the Property was caused by a Covered Cause of Loss during the Policy Period that is not otherwise excluded, there is still no coverage to the extent the damage does not exceed Plaintiff's deductible:

### WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

*This endorsement modifies insurance provided under the following:*

*BUILDERS RISK COVERAGE FORM*
*BUILDING AND PERSONAL PROPERTY COVERAGE*
*FORM*
*CONDOMINIUM ASSOCIATION COVERAGE FORM*
*CONDOMINIUM COMMERCIAL UNIT-OWNERS*
*COVERAGE FORM*
*STANDARD PROPERTY POLICY*
*TOBACCO SALES WAREHOUSES COVERAGE FORM*

**SCHEDULE**

| *Premises Number* | *Building Number* | *Windstorm Or Hail Deductible Percentage - Enter*<br>*1 %, 2%, 3% or 5% and $1,000, $2,500 or $5,000 Minimum* |
|---|---|---|
| *1* | *1* | *2 % Subject to $2,500 Minimum* |
| | | *% Subject to $ Minimum* |
| | | *% Subject to $ Minimum* |
| *Information required to complete this Schedule, if not shown above, will be shown in the Declarations.* | | |

*The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.*

*Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.*

*As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.*

### WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS

*A. Calculation Of The Deductible - All Policies*

*1. A Deductible is calculated separately for, and applies separately to:*
   *a. Each building that sustains loss or damage;*
   *b. The personal property at each building at which there is loss or damage to personal property; and*
   *c. Personal property in the open.*
   *If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.*

*2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.*

*CPACI 03 21 02 17*

13.     Plaintiff's claims are barred because Plaintiff has failed to satisfy all

conditions precedent to filing suit against Atlantic Casualty:

### COMMERCIAL PROPERTY CONDITIONS

*This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Form.*

*\**

### D. LEGAL ACTION AGAINST US
*No one may bring a legal action against us under this Coverage Part unless:*

*1. There has been full compliance with all of the terms of this Coverage Part; and*
*2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.*

*CP 00 90 07 88*

14.     Atlantic Casualty pleads the two year limitations in the Policy and all

statutes of limitation.

15.     The Policy states:

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

*This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:*

    *1. This Coverage Part;*
    *2. The Covered Property;*
    *3. Your interest in the Covered Property; or*
    *4. A claim under this Coverage Part.*

16.    If material misrepresentations were made in the procurement of the Policy, Atlantic Casualty gives notice and pleads that any material misrepresentation voids or limits coverage under the Texas Insurance Code provisions or common law governing misrepresentations in the insurance procurement or claim processes.

17.    The Policy states that: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."  The Policy contains an assignment of benefits exclusion that states, "No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void.  No causes of action arising from or based on this policy may be assigned, and any such assignment is void."

18.    Plaintiff bears the burden of proof to segregate damages and cannot segregate damages.  Atlantic Casualty pleads the doctrine of concurrent causation. Plaintiff has not and cannot meet its burden of segregating harm resulting from concurrent causes.  Plaintiff fails and failed to allocate between covered and excluded perils.  Failure to segregate is fatal to recovery.

19.    Because Plaintiff's allegations are generally based upon Atlantic Casualty's alleged failure to pay Policy benefits and Plaintiff has made no showing of an independent injury, the absence of liability for Plaintiff's alleged underlying insurance claim precludes Plaintiff's extra-contractual claims against Atlantic Casualty arising out of those allegations.

20.    To the extent attorneys' fees are recoverable at all, they are limited to those fees that are reasonable and necessary.

21.    Atlantic Casualty is entitled to a credit/offset for all amounts already paid by any party or entity to Plaintiff for the damages that are the subject of this lawsuit.

22.    Atlantic Casualty neither had nor breached a contractual duty or obligation to Plaintiff under the Policy, but even if it did, which is denied, any such breach did not proximately, legally, or foreseeably cause Plaintiff to sustain any damages.

23.    To the extent Plaintiff either did not own the insured property or had no insurable interest in the insured property at the time of the claimed loss, there is no right to compensation regardless of the cause of loss.

24.    The statutory deadlines of Texas Insurance Code Chapter 542 do not apply after litigation was filed.  The insurance code provisions of the prompt pay act only apply if there is a covered claim during the policy period.

25.     Plaintiff failed to satisfy the notice requirements under Section 542A.003 of the Texas Insurance Code for this alleged loss, thereby barring its recovery of potential attorneys' fees that might otherwise be awarded to Plaintiff pursuant to Section 542A.007 of the Code.  Plaintiff's failure to satisfy the insurance code requirements for pre-suit notice bars attorney's fees and expenses.

26.     The existence of coverage for the underlying insurance claim is mandatory to establish the basis of Plaintiff's claims for alleged statutory violations. Plaintiff has failed to establish coverage under the Policy for the additional amounts sought in this suit.

27.     Plaintiff has failed to show an independent injury.

28.     Plaintiff is barred from recovery from Atlantic Casualty, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages and its contribution to its own alleged damages.

29.     The Policies do not permit and void any assignment of benefits by Plaintiff:

### *ASSIGNMENT OF BENEFITS EXCLUSION*

> *No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void. No causes of action arising from or based on this policy may be assigned, and any such assignment is void.*
>
> *ACI-AOBE 12 17*

30.     Any recovery by Plaintiff for punitive damages against Atlantic Casualty would be subject to limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as other statutory damage caps provided by law.

31.     This matter is a bona fide dispute and there is no cause of action for statutory claims or extracontractual claims.

32.     Atlantic Casualty reserves the right to assert other defenses as additional facts are revealed during discovery.

## C. CONCLUSION

For these reasons, Atlantic Casualty respectfully requests that the Court dismiss Plaintiff's claims against Atlantic Casualty with prejudice and award Atlantic Casualty all relief at law or in equity to which it may be entitled.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON, MCGARR, KAMINSKI & SHIRLEY, LLP

*Camille Johnson*

Camille Johnson
State Bar No. 10686600
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com

Jessica Marcoux Hall
State Bar No. 24046348
The Overlook at Gaines Ranch
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
Phone: (512) 347-1604
Fax: (512) 347-1676
jessica@ssjmlaw.com

**COUNSEL FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of February, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Vincent P. Circelli
Preston J. Dugas III
DUGAS & CIRCELLI, PLLC
1701 River Run, Suite 703
Fort Worth, Texas 76107

**COUNSEL FOR PLAINTIFF**

*Camille Johnson*
Camille Johnson